

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In re:

MEGAN CHRISTINE FIEDLER,

        Debtor.

_____

THE GOLDEN ONE CREDIT UNION,
a California Corporation,

        Plaintiff,

v.

MEGAN CHRISTINE FIEDLER, an
individual,

        Defendant.

Case No. 23-20862

Adv. Pro. No. 2023-02038-C

FILED
OCT 30 2023
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

### MEMORANDUM ON 11 U.S.C. § 523(d) AND RULE 9011(b)

This is a case of sue first and ask questions later. The Complaint was filed in disregard of the Rule 9011 duties to "inquire" and to "stop and think" before filing legal or factual contentions of dubious merit.

Golden One Credit Union filed a nondischargeability Complaint alleging 11 U.S.C. § 523(a)(2) fraud with respect to a "consumer debt" without making the inquiry "reasonable under the circumstances" required by Rule 9011(b) and without being "substantially justified" within the meaning of § 523(d).

The boilerplate Complaint alleged only two operative facts. First, Golden One made an unsecured loan of $9,000 on November 3, 2022, for the stated purpose of helping Defendant retire a $12,500 Wells Fargo credit card debt at 24.3% interest. Second, on December 20, 2022, the Defendant did not make the first payment when due. Those two facts, without more, were alleged to

suffice to prove an intentional fraud perpetrated on November 3.

## Facts

The Debtor filed her chapter 7 case March 21, 2023. The Meeting of Creditors was April 18, 2023. Plaintiff filed its Complaint on April 25, 2023, without Plaintiff or Plaintiff's counsel having attended the Meeting of Creditors, listened to the recording of the Meeting of Creditors, or posed any questions to Debtor or Debtor's counsel. The Complaint was filed seven days after the Meeting of Creditors and sixty-three days before the June 20, 2023, deadline for nondischargeability actions.

Golden One relied solely on the elementary fallacy *post hoc ergo propter hoc* (because this, then that) that failure to make the first payment when due December 20, 2022, proves that the debtor intended on November 3 not to pay.

Golden One had made no inquiry to identify surrounding facts that might support its allegations that the Debtor actually intended to defraud Plaintiff at the inception of the loan on November 3, 2022.

Nor did Golden One pay any attention to the Debtor's written explanation dated May 3, 2023 (filed May 8, 2023), in a document titled "Defendant's Statement of Undisputed Facts in Support of Her Motion for Bankruptcy," which this court later deemed to constitute an Answer.

The Debtor explained that she sought help from Golden One regarding ways to address a $12,500 balance on a Wells Fargo credit card charging 24.3% interest. Golden One's employee advised her against consolidating with another company or filing

for bankruptcy and recommended a Golden One loan. After conducting its due diligence inquiry, the maximum Golden One would lend was $9,000. The Debtor stated that she believed Golden One's advice and accepted the $9,000 unsecured loan, which was disbursed on November 3, 2022. The next day she paid Wells Fargo $10,500 on its $12,500 credit card debt.

The Defendant explained that "between November 4, 2022 and December 20, 2022 (the date which the first loan payment was due) I incurred another $1,000 on the credit card in order to not default on my other loans/debts [including her Golden One car loan]. It was this fact that made it occur to me that the advice given to me by Golden 1's banker was poor. The $9,000 loan did not benefit my financial situation in the slightest."

She added, "Mid December I began calling around to different bankruptcy attorneys, until I found one I liked. Matthew Decaminada, [Esq.] was informed I had not paid a single payment on the Golden 1 loan in question and believed it would not be an issue given my financial position. Matthew instructed me to begin defaulting on my loans as I made monthly payments on my retainer to him."

She concluded, "I took out the loan with every intention of paying Golden 1 back but unfortunately it did not improve my financial position as I had been led to believe by the Golden 1 Banker that assisted me with the loan. Bankruptcy was my best option, if I remained in the financial position I was in I would have continued to bury myself in debt that I would never be able to get out from under."

The Defendant appended pay advices establishing that she is

an hourly employee in a supermarket job under a collective bargaining agreement at a rate of $19.30/hour [$772/40hr week] and that her hours vary and are not always 40 hours/week.

At a status conference on June 28, 2023, this court concluded that the "Defendant's Statement of Undisputed Facts" constituted an Answer and that no discovery was necessary as no discovery was being requested or suggested by Golden One. It fixed a prompt trial date of July 18, 2023, so as to provide the Debtor and Plaintiff to provide evidence supporting their respective cases, including the opportunity to testify under oath subject to cross-examination.

Seven days later, on July 5, 2023, the Plaintiff requested dismissal of the adversary proceeding, which request was granted on July 7, 2023, with a reservation that an Order to Show Cause would issue regarding § 523(d) and Rule 9011.

The ensuing Order to Show Cause issued August 2, 2023, was addressed to Golden One and its attorney, Karel Rocha, and the law firm of Prenovost, Normandin, Dawe & Rocha. The OSC noted that the timing of the filing of the complaint long before the Complaint deadline and of the dismissal promptly upon setting the matter for trial invited inferences: (1) that the Complaint was not well-founded; (2) that there was not a pre-filing "inquiry reasonable under the circumstances"; and (3) that the Complaint was filed for the improper purpose of implementing a strategy of suing impecunious consumers on small claims on little or no pretext so as to extract payments by way of default judgment or "settlement" in lieu of trial because of the high costs to the consumers of defending litigation.

The OSC noted that the 22-paragraph boilerplate Complaint alleged only two concrete facts: (1) $9,000 loan on November 3; and (2) nonpayment of the first installment on its December 20 due date. No surrounding circumstances were alleged that might support an inference of actual intent to defraud on November 3.

I

Rule 9011 Duty to Make Inquiry Reasonable Under the Circumstances

The signature of an attorney filing a Complaint is a certification that there has been an "inquiry reasonable under the circumstances." Fed. R. Bankr. P. 9011(b).

The meaning of "inquiry reasonable under the circumstances" has previously been explained by this court. In re Estate of Taplin, 641 B.R. 236, 245-52 (Bankr. E.D. Cal. 2022).

The basic principle, in the words of the Civil Rules Advisory Committee, is to "require litigants to 'stop and think' before making legal or factual contentions." Fed. R. Civ. P. 9011, Adv. Comm. Note to 1993 Amendment (emphasis supplied).

A

The Golden One response to the OSC notes that there is a correlation between "first payment" or "early payment" defaults and fraud. The Comptroller of the Currency, Freddie Mac, and the National Credit Union Administration all agree that such payment defaults "assist in identifying potential fraud," constitute fraud red flags, logically correlate with fraud, and require monitoring by the financial institution. Golden One Response to OSC at 7-8.

This court takes fraud seriously and is mindful that early payment defaults do correlate with fraud and that financial institutions such as Golden One are obliged to take note and appropriate action.

For the borrower, an early payment default means that there is explaining to do.

Nevertheless, when it comes to commencing a legal action by filing a fraud Complaint, the existence of a fraud indicator, such as early payment default, may trigger an inquiry by a creditor, it is not alone sufficient ground for a lawsuit in which the essential elements of fraud must be proved by preponderance of evidence. There still must be the "inquiry reasonable under the circumstances" and that is precisely what did not happen here.

The inquiry reasonable under the circumstances preliminary to filing a complaint is required so that the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The focus is on the debtor's intent at the inception of the loan. See, e.g., Anastas v. American Savings Bank, 94 F.3d 1280, 1285-86 (9th Cir. 1994). That is a fact-intensive inquiry for which the factual contents of the pleadings must be sufficient for the court to draw the reasonable inference. The mere circumstance of a non-payment 47 days later is, without more, too weak a reed on which to build a case.

Accepting that there was explaining for the debtor to do, no attempt was made to obtain an explanation. Golden One, as a

creditor holding a "consumer debt," is authorized by § 341(c) to send a non-lawyer representative to "appear at and participate in the meeting of creditors" in a chapter 7 or 13 case "either alone or in conjunction with an attorney for the creditor." 11 U.S.C. § 341(c). Neither Golden One, nor Rocha, attended the meeting of creditors, thereby missing an early opportunity to inquire of the debtor under oath why there was a first payment default. There was no request for reaffirmation. There was no Rule 2004 examination. There was no inquiry directed to debtor's counsel before filing the Complaint.

B

Rocha described his desktop review of the client file and of the Chapter 7 Petition and Schedules as if that was sufficient inquiry. Rocha Decl. ¶¶ 10-23.

Although Rocha says that in comparing the loan file with the bankruptcy file he noted inconsistent statements as to the debtor's income, none of the putative inconsistencies appear to be material. Nor are they inconsistent with the debtor's employment earning $19.30 per hour under a collective bargaining agreement in which the total hours per week are variable and subject to the vagaries of life as a single parent of an elementary school age child. In any event, the Complaint does not allege a false financial statement.

Citing no authority, Rocha opines that it was "abnormal for a person to file a bankruptcy petition when they have less than $20.00 per month more in expenses than their monthly income. To decide to declare bankruptcy due to only a difference of $20.00 a

month rather than adjust spending habits is indicia of fraud."

Rocha's assertions are not credible. First, by focusing only on income and expenses he ignores accumulated debts that would be discharged. Second, he assumes a steady rate of monthly income and expenses that ignore the aforesaid vagaries of life as a single parent living on a razor-thin budget with little or no contingency. From the perspective of a bankruptcy judge who has presided over more than 160,000 bankruptcy case in 35 years, it is neither abnormal nor indicative of fraud for a debtor whose regular net income is barely more than regular monthly expenses to seek bankruptcy relief to eliminate accumulated debt.

By any measure, there was not an "inquiry reasonable under the circumstances."

Rocha, and Golden One by extension, did not "stop and think" and make an investigation appropriate under the circumstances before filing the Complaint.

II

Rule 9011(b)(2) Improper Legal Contention

The Rule 9011(b)(2) certification made by the signature to the Complaint is that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Bankr. P. 9011(b)(2).

The OSC identified paragraph 14 of the Complaint as a potentially unwarranted legal contention:

14. The Defendant's obligations to Plaintiff are not consumer debts as defined at 11 U.S.C. § 101(8) to the

extent they were based upon fraud and willful, malicious, and tortious injury to Plaintiff.
Complaint ¶ 14.

The OSC noted that this court is unaware of any support in decisional law that a debt incurred "primarily for a personal, family, or household purpose" [the § 101(8) definition] is nevertheless not a "consumer debt" if motivated by fraudulent intent. Hence, it appeared that paragraph 14 is not warranted by existing law.

Recognizing that Rule 9011(b)(2) tolerates "argument for change to existing law," but only to the extent such argument is not frivolous, it noted that paragraph 14 appears to be frivolous. Any consumer debt that is proved in an adversary proceeding to be based upon fraud is excepted from discharge under § 523(a)(2), but does not lose its status as "consumer debt."

It is an "objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 9011, Adv. Comm. Note to 1993 Amendment.

Frivolous means "both baseless and made without a reasonable and competent inquiry." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990)(en banc).

Although one might be able to allege and prove that the subject debt was not incurred for a "personal, family, or household purpose," there is no hint in this case that there is any plausible factual basis for contending that the subject debt was incurred for any purpose other than paying garden-variety

credit card debt. As a matter of law, fraudulent intent does not disqualify a debt from "consumer debt" status.

It appeared that paragraph 14 served only two possible purposes. First, to intimidate as part of an effort to extract an unjust settlement. Second, for Golden One to evade its exposure to attorneys' fees and costs under § 523(d) for unsuccessful § 523(a)(2) actions in which the creditor's position is not "substantially justified."

Rocha asserted in response to the OSC that paragraph 14 "is based on the contention that if a person obtains money from a creditor through a loan but does so with fraudulent intent then that person should not benefit from the protections that are afforded to consumers as such protections are designed to protect the innocent consumer and not a person committing actual fraud." Decl. of Rocha, ¶31.

This explanation ignores the consequences of § 523(a)(2), which is tailored to except from discharge any debts obtained by actual fraud and implies that they are not adequate to the task. And, it ignores the reality that, other than § 523(d), there are virtually no special protections for "consumer debt" in the Bankruptcy Code.

Moreover, the "protections that are afforded to consumers" that Rocha touts are few: limited to § 523(d)(fees and costs) and § 722 (redemption). The remaining fourteen appearances of "consumer debt" in the Bankruptcy Code and Rules are better described as creditor oriented (§§ 341(c); 342; 502(k); 524(d)(2)&(c)(6); 528; 547(c)(8); 707(b); 1201(a); 1222(b)(1); 1301(a); 1305(a)(2); 1322(b)(1); Rule 2002(o); Rule 5008).

Ironically, Rocha's theory that the debt was not a "consumer debt" would operate to shoot his client in the foot by stripping Golden One of its special § 341(c) license to appear at and participate in the meeting of creditors without a lawyer. In short, Complaint paragraph 14 is a transparent effort to evade § 523(d) liability for a creditor who sues unsuccessfully to establish a consumer debt was obtained by nondischargeable § 523(a)(2) fraud.

It is also significant that the response to the OSC does not identify any decisional authority to support paragraph 14. In fact, there is none.

On balance, paragraph 14 is both baseless and was made without a reasonable and competent inquiry.

Hence, paragraph 14 of the Complaint violates Rule 9014(b)(2).

### III

### Rule 9011(b)(3) Evidentiary Support

The signature on the Complaint constitutes a certification that the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Bankr. P. 9011(b)(3).

The Golden One response emphasizes the clause "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery" clause.

The fatal flaw with this response is that no allegation in the Complaint is "specifically so identified," as Rule 9011(b)(3)

11

requires.

IV

11 U.S.C. § 523(d) Fees and Costs

A creditor who requests a determination of dischargeability of a "consumer debt" under § 523(a)(2) that ultimately is discharged is liable for the debtor's costs and a reasonable attorney's fee for the proceeding if the court finds that the position of the creditor was not substantially justified, unless special circumstances would make the award unjust. 11 U.S.C. § 523(d).

A

The law of the Ninth Circuit regarding § 523(d) was established by First Card v. Hunt (In re Hunt), 238 F.3d 1098 (9th Cir. 2001)(spoiler alert: affirming the undersigned as trial judge). Rocha makes no mention of Hunt.

The questions of "substantial justification" and of "special circumstances" are reviewed for abuse of discretion.

The creditor plaintiff has the burden to prove its position was substantially justified, which entails demonstrating a reasonable basis in law and fact. Hunt, 238 F.3d at 1103-04.

Unsupported allegations in a creditor's pleadings are not sufficient to carry the creditor's burden under § 523(d). Hunt, 238 F.3d at 1103.

The Ninth Circuit specifically rejected the proposition that "cases brought in good faith should not be chilled," ruling that "whenever the creditor's position is not substantially justified

(subject to the special circumstances exception) § 523(d) certainly does aim to chill some actions that are brought in good faith, namely, those that do not have a reasonable basis in law and fact." Hunt, 238 F.3d at 1104 n.6.

Special circumstances that would make an award unjust are subject to traditional equitable principles except that such principles are to be construed in light of the purpose of § 523(d) "to deter creditors from bringing frivolous challenges to the discharge of consumer debts." The express purpose "could be seriously thwarted if the 'special circumstances' exception became a vehicle for rigorous application of some sort of 'unclean hands' doctrine to debtors' attorneys." Hunt, 238 F.3d at 1104, citing S.Rep. No. 98-65, at 9-10 (1983).

It is fascinating that Golden One's response to the § 523(d) issue prepared by Rocha makes no mention of Hunt, even though it has been the settled law of the Ninth Circuit since 2001. Instead, it cites three pre-2001 BAP decisions. Itule v. Metlease, Inc. (In re Itule), 114 B.R. 206, 213 (9th Cir. BAP 1990)(No § 523(d) fees for prevailing creditor); First Card v. Carolan (In re Carolan), 204 B.R. 980, 987 (9th Cir. BAP 1996)(creditor "substantially justified"); In re Stine, 254 B.R. 244, 250 (9th Cir. BAP 2000)(reversing "substantially justified" determination).

It is disturbing that Rocha cites, as if it is a holding, a one-judge concurrence in BAP Carolan for the proposition that a court must balance against the "risk that imposing attorney's fees and costs may chill creditor efforts" to have fraud debts declared nondischargeable. Not only does Rocha not disclose that

13

1 | it is a one-judge concurrence and not a BAP holding, he omits to
2 | reveal that the Ninth Circuit later squarely rejected that
3 | proposition in Hunt in a decision that establishes the law of the
4 | Ninth Circuit. Compare Plaintiff's Response at 13, with Hunt, 238
5 | F.3d at 1104 n.6 ("§ 523(d) certainly does aim to chill").
6 |     Rocha's argument is not persuasive – or worse.

B

9 | It follows from the above discussion that the Golden One
10 | adversary proceeding did not have a reasonable basis in law and
11 | fact.
12 |     The essential elements of § 523(d) are straightforward.
13 | Golden One requested determination of the dischargeability of a
14 | consumer debt under § 523(a)(2). The debt was discharged. 11
15 | U.S.C. § 523(d).
16 |     The position of Golden One was not substantially justified
17 | because the allegations did not have a reasonable basis in law
18 | and fact. Hunt, 238 F.3d at 1103-04 & n.6.
19 |     No special circumstances, as to which Golden One has the
20 | burden of proof, have been urged by Golden One that would make an
21 | award of fees and costs unjust.

C

24 |     In one respect, this is Golden One's lucky day. The debtor's
25 | bankruptcy counsel did not assist her in defending the adversary
26 | proceeding. There was nothing untoward about leaving the debtor
27 | self-represented because local rules permit chapter 7 counsel to
28 | provide by contract that their scope of representation does not

extend to adversary proceedings. E.D. Cal. Local Bk. Rule 2017-1(a)(1). But he missed an opportunity to claim attorney's fees from Golden One.

The self-represented debtor necessarily incurred costs that are eligible for reimbursement to her under § 523(d). The record is sufficient for this court to make a reasonable estimate of the § 523(d) costs. She incurred production costs for her "Defendant's Statement of Undisputed Facts in Support of Her Motion for Bankruptcy," which was well done for a non-lawyer, and which this court deemed to be an Answer. She was required to make multiple trips to the Sacramento Courthouse from her home in Camino, California, to file her papers and to appear at the status conference hearing that led to the setting of a trial date. A reasonable estimate of the total § 523(d) costs is $450.00, which shall be paid to her by Golden One.

V

Rule 9011 Sanctions

The question becomes what remedial sanctions are appropriate to impose on account of the Rule 9011 violations described herein.

A

This is a court-initiated sanction pursuant to an order to show cause, as permitted by Rule 9011(c)(1)(B).

This court's order to show cause was not issued until after the adversary proceeding was dismissed upon this court's order based on the plaintiff's request pursuant to Civil Rule 41(a)(2).

Fed. R. Bankr. P. 7041, <u>incorporating</u> Fed. R. Civ. P. 41.

Monetary sanctions may not be awarded on the court's initiative where the court's order to show cause does not issue until after voluntary dismissal or settlement of the claims made by or against the party, or whose attorneys are, to be sanctioned. Fed. R. Bankr. P. 9011(c)(2)(B).

Nonmonetary sanctions are permitted on the court's initiative following an order to show cause that is issued after dismissal or settlement of the subject claims. Fed. R. Bankr. P. 9011(c)(2). The operative principle is that such a sanction should be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. <u>Id</u>.

B

There are two points of particular concern. First, there is Rocha's failure to cite the controlling Ninth Circuit authority regarding § 523(d). The consequence for Rocha is self-inflicted reputational damage.

Second, Rocha's violation of Rule 9011(b)(2) regarding the allegation in Complaint paragraph 14 that fraud disqualifies a debtor for "consumer debt" status is of more immediate concern.

This is not an isolated violation. The records of adversary proceedings in the Eastern District reveal that on six other occasions Rocha has filed complaints containing language identical to Complaint paragraph 14:

Adv. No. 2022-01013 Golden One v. Lopez          Complaint ¶ 26

| | |
|---|---|
| Adv. No. 2021-02028 Golden One v. Flores | Complaint ¶ 27 |
| Adv. No. 2018-01051 LBS Finan. CU v. Perez | Complaint ¶ 28 |
| Adv. No. 2017-02126 LBS Finan. CU v. Nieri | Complaint ¶ 27 |
| Adv. No. 2015-02244 Gateway One v. Barry | Complaint ¶ 19 |
| Adv. No. 2014-01110 LBS Finan. CU v. Newton | Complaint ¶ 22 |

It follows that there is an established pattern of violations of Rule 9011(b)(2) by Rocha.

Sanctions are appropriate to impose based on what is "reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11, Adv. Comm. Note to 1993 Amendment, incorporated by Fed. R. Bankr. P. 9011.

Karel Rocha, as the "person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court." In addition, the law firm of Prenovost, Normandin, Dawe & Rocha "absent exceptional circumstances ... is to be held also responsible." Id.

What is reasonably necessary to deter repetition of the conduct in this instance is to impose a requirement of prefiling review by the undersigned judge of every complaint alleging nondischargeable debt before it is filed in the U.S. Bankruptcy Court for the Eastern District of California by Karel Rocha or the law firm of Prenovost, Normandin, Dawe & Rocha between the date of the issuance of this order and June 30, 2025.

Date: October 30, 2023

UNITED STATES BANKRUPTCY JUDGE

17

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Karel Rocha
2122 N. Broadway
Suite 200
Santa Ana, CA 92706

Prenovost, Normandin, Dawe & Rocha
2122 N. Broadway
Suite 200
Santa Ana, CA 92706

Jamie P. Dreher
621 Capitol Mall, 18th Floor
Sacramento, CA 95814

Courtney Linn
The Golden 1 Credit Union
P.O. BOX 15966
SACRAMENTO, CA 95852

Megan Christine Fiedler
2949 Alder Drive
Camino, CA 95709