**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re:                            )
                                  )
MEGAN CHRISTINE FIEDLER,          )   Case No. 23-20862
                                  )
                    Debtor.       )
_____ )
                                  )   Adv. Pro. No. 2023-02038-C
                                  )
THE GOLDEN ONE CREDIT UNION,      )
a California Corporation,         )
                                  )
                    Plaintiff,    )
v.                                )
                                  )
MEGAN CHRISTINE FIEDLER, an       )
individual,                       )
                                  )
                    Defendant.    )
_____ )

**OPINION**[1]

This is a case of sue first and ask questions later. The Complaint was filed in disregard of the Rule 9011 duties to "inquire" and to "stop and think" before filing legal or factual contentions of dubious merit.

Golden One Credit Union filed a nondischargeability Complaint alleging 11 U.S.C. § 523(a)(2) fraud with respect to a "consumer debt" without making the inquiry "reasonable under the circumstances" required by Rule 9011(b) and without being "substantially justified" within the meaning of § 523(d).

The boilerplate Complaint alleged only two operative facts. First, Golden One made an unsecured loan of $9,000 on November 3, 2022, for the stated purpose of helping Defendant retire a

_____

[1]This Opinion supersedes the October 30, 2023, Memorandum.

$12,500 Wells Fargo credit card debt at 24.3% interest. Second, on December 20, 2022, the Defendant did not make the first payment when due. Those two facts, without more, were alleged to suffice to prove an intentional fraud perpetrated on November 3.

<u>Facts</u>

The Debtor filed her chapter 7 case March 21, 2023. The Meeting of Creditors was April 18, 2023. Plaintiff filed its Complaint on April 25, 2023, without Plaintiff or Plaintiff's counsel having attended the Meeting of Creditors, listened to the recording of the Meeting of Creditors, or posed any questions to Debtor or Debtor's counsel. The Complaint was filed 7 days after the Meeting of Creditors and 63 days before the June 20, 2023, deadline for nondischargeability actions.

Golden One relied solely on the elementary fallacy *post hoc ergo propter hoc* (because this, then that) that failure to make the first payment when due December 20, 2022, proves that the debtor intended on November 3 not to pay.

Golden One had made no inquiry to identify surrounding facts that might support its allegations that the Debtor actually intended to defraud Plaintiff at the inception of the loan on November 3, 2022.

Nor did Golden One pay any attention to the Debtor's written explanation dated May 3, 2023 (filed May 8, 2023), in a document titled "Defendant's Statement of Undisputed Facts in Support of Her Motion for Bankruptcy," which this court later deemed to constitute an Answer.

The Debtor explained that she sought help from Golden One

regarding ways to address a $12,500 balance on a Wells Fargo
credit card charging 24.3% interest. Golden One advised her
against consolidating with another company or filing for
bankruptcy and recommended a Golden One loan. After conducting
its due diligence inquiry, the maximum Golden One would lend was
$9,000.[2] The Debtor stated that she believed Golden One's advice
and accepted the $9,000 unsecured loan, which was disbursed on
November 3, 2022. The next day she paid Wells Fargo $10,500 on
its $12,500 credit card debt.

The Defendant explained that "between November 4, 2022 and
December 20, 2022 [first loan payment due date] I incurred
another $1,000 on the credit card in order to not default on my
other loans/debts [including her Golden One car loan]. It was
this fact that made it occur to me that the advice given to me by
Golden 1's banker was poor. The $9,000 loan did not benefit my
financial situation in the slightest."

She added, "Mid December I began calling around to different
bankruptcy attorneys, until I found one I liked. Matthew
Decaminada, [Esq.] was informed I had not paid a single payment
on the Golden 1 loan in question and believed it would not be an
issue given my financial position. Matthew instructed me to begin
defaulting on my loans as I made monthly payments on my retainer
to him."[3]

---

[2]A full consolidation at a lower interest rate would have
made economic sense, but not a partial consolidation that saddled
the debtor with extra monthly expense.

[3]Suspending payment of existing debt in order to pay counsel
does not offend § 526(a)(4). Milavetz, Gallop & Milavetz, PA, v.
United States, 559 U.S. 229, 242-48 (2010).

1   She concluded, "I took out the loan with every intention of

2   paying Golden 1 back but unfortunately it did not improve my

3   financial position as I had been led to believe by the Golden 1

4   Banker that assisted me with the loan. Bankruptcy was my best

5   option, if I remained in the financial position I was in I would

6   have continued to bury myself in debt that I would never be able

7   to get out from under."

8       The Defendant appended pay advices establishing that she is

9   an hourly employee in a supermarket job under a collective

10  bargaining agreement at a rate of $19.30/hour [$772/40hr week]

11  and that her hours vary and are not always 40 hours/week.

12      At a status conference on June 28, 2023, this court deemed

13  the "Defendant's Statement of Undisputed Facts" to be an Answer

14  and ruled no discovery was necessary as no discovery was being

15  requested or suggested by Golden One. A prompt trial date of July

16  18, 2023 was set, to enable the Debtor and Plaintiff to provide

17  evidence supporting their respective cases, including the

18  opportunity to testify under oath subject to cross-examination.

19      Seven days later, on July 5, 2023, the Plaintiff requested

20  dismissal of the adversary proceeding, which was granted on July

21  7, 2023, with a reservation that an Order to Show Cause would

22  issue regarding § 523(d) and Rule 9011.

23      The ensuing OSC issued August 2, 2023, was addressed to

24  Golden One, attorney Karel Rocha, and the Prenovost, Normandin,

25  Dawe & Rocha law firm. The OSC noted that the timing of the

26  filing of the Complaint long before the deadline and the prompt

27  dismissal in the face of an imminent trial invited inferences:

28  (1) that the Complaint was not well-founded; (2) that there was

not a pre-filing "inquiry reasonable under the circumstances;" and (3) that the Complaint was filed for the improper purpose of implementing a strategy of suing impecunious consumers on small claims on little or no pretext so as to extract payments by way of default judgment or "settlement" in lieu of trial because of the high costs to the consumers of defending litigation.

The OSC noted that the 22-paragraph boilerplate Complaint alleged only two concrete facts: (1) $9,000 loan on November 3; and (2) nonpayment of the first installment on its December 20 due date. No surrounding circumstances were alleged that might support an inference of actual intent to defraud on November 3.

I

Rule 9011 Duty to Make Inquiry Reasonable Under the Circumstances

The signature of an attorney filing a Complaint is a certification that there has been an "inquiry reasonable under the circumstances." Fed. R. Bankr. P. 9011(b).

The meaning of "inquiry reasonable under the circumstances" has previously been explained by this court. In re Estate of Taplin, 641 B.R. 236, 245-52 (Bankr. E.D. Cal. 2022).

The basic principle, in the words of the Civil Rules Advisory Committee, is to "require litigants to 'stop and think' before making legal or factual contentions." Fed. R. Civ. P. 9011, Adv. Comm. Note to 1993 Amendment (emphasis supplied).

A

The Golden One OSC response correctly notes that there is a correlation between "first payment" or "early payment" defaults

and fraud. The Comptroller of the Currency, Freddie Mac, and the National Credit Union Administration agree such payment defaults "assist in identifying potential fraud," constitute fraud red flags, logically correlate with fraud, and require monitoring by the financial institution. Golden One Response to OSC at 7-8.

This court takes fraud seriously and is mindful that early payment defaults can indicate fraud and that financial institutions such as Golden One are required by regulators to take note and appropriate action.

For the borrower, an early payment default means that there is explaining to do.

Nevertheless, when it comes to commencing a legal action by filing a fraud Complaint, the existence of an early payment default fraud indicator may trigger an inquiry by a creditor but is not alone sufficient ground for a lawsuit in which the essential elements of fraud must be proved by preponderance of evidence. There still must be the "inquiry reasonable under the circumstances" and that is precisely what did not happen here.

The inquiry reasonable under the circumstances preliminary to filing a complaint is required so that the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The focus is on the debtor's intent at the inception of the loan. See Anastas v. American Savings Bank, 94 F.3d 1280, 1285-86 (9th Cir. 1994). That is a fact-intensive inquiry for which the factual contents of the pleadings must be sufficient for the court to draw the reasonable inference. The mere circumstance of

1  a non-payment 47 days later is, without more, too weak a reed on
2  which to build a case.

3      Accepting that there was explaining for the debtor to do, no
4  attempt was made to obtain an explanation. Golden One, as a
5  creditor holding a "consumer debt," is authorized by § 341(c) to
6  send a non-lawyer representative to "appear at and participate in
7  the meeting of creditors" in a chapter 7 or 13 case "either alone
8  or in conjunction with an attorney for the creditor." 11 U.S.C.
9  § 341(c). Yet, neither Golden One, nor Rocha, attended the
10 meeting of creditors, thereby missing an early opportunity to
11 inquire of the debtor under oath why there was a first payment
12 default. There was no request for reaffirmation. There was no
13 Rule 2004 examination. There was no inquiry directed to debtor's
14 counsel before filing the Complaint.

15
16                                  B

17     Rocha described his desktop review of the client file and of
18 the Chapter 7 Petition and Schedules as if that was sufficient
19 inquiry. Rocha Decl. ¶¶ 10-23.

20     Although Rocha says that in comparing the loan file with the
21 bankruptcy file he noted inconsistent statements as to the
22 debtor's income, none of the putative inconsistencies appear to
23 be material. Nor are they inconsistent with the debtor's
24 employment earning $19.30 per hour under a collective bargaining
25 agreement in which the total hours per week are variable and
26 subject to the vagaries of life as a single parent of an
27 elementary school age child. In any event, the Complaint does not
28 allege a false financial statement.

Citing no authority, Rocha opines that it was "abnormal for a person to file a bankruptcy petition when they have less than $20.00 per month more in expenses than their monthly income. To decide to declare bankruptcy due to only a difference of $20.00 a month rather than adjust spending habits is indicia of fraud."

Rocha's assertions are not credible. First, his focus on income and expenses ignores accumulated debt to be discharged. Second, he assumes a stable monthly balance sheet that ignores the aforesaid vagaries of a single-parent's life living on a razor-thin budget with little or no contingency. Third, improving debtors' balance sheets is a core value of the bankruptcy process. From the perspective of a bankruptcy judge who has presided over more than 160,000 bankruptcy cases in 35 years, it is neither abnormal nor indicative of fraud for a debtor whose regular monthly income and expenses leave little or no surplus to seek bankruptcy relief to eliminate accumulated debt.

By any measure, there was not an "inquiry reasonable under the circumstances."

Rocha, and Golden One by extension, did not "stop and think" and make an investigation appropriate under the circumstances before filing the Complaint.

II

Rule 9011(b)(2) Improper Legal Contention

The Rule 9011(b)(2) certification made by the signature to the Complaint is that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or

8

for establishing new law." Fed. R. Bankr. P. 9011(b)(2).

The OSC identified paragraph 14 of the Complaint as a potentially unwarranted legal contention:

> 14. The Defendant's obligations to Plaintiff are not consumer debts as defined at 11 U.S.C. § 101(8) to the extent they were based upon fraud and willful, malicious, and tortious injury to Plaintiff.

Complaint ¶ 14.

The OSC noted that this court is unaware of any support in decisional law that a debt incurred "primarily for a personal, family, or household purpose" [the § 101(8) definition] is nevertheless not a "consumer debt" if motivated by fraudulent intent. Hence, it appeared that paragraph 14 is not warranted by existing law.

Recognizing that Rule 9011(b)(2) tolerates "argument for change to existing law," but only to the extent such argument is not frivolous, it noted that paragraph 14 seems frivolous. Any consumer debt that is proved in an adversary proceeding to be based upon fraud is excepted from discharge under § 523(a)(2), but does not lose its status as "consumer debt."

It is an "objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 9011, Adv. Comm. Note to 1993 Amendment.

Frivolous means "both baseless and made without a reasonable and competent inquiry." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990)(en banc).

Although one might be able to allege and prove that the subject debt was not incurred for a "personal, family, or household purpose," there is no hint in this case that there is

1   any plausible factual basis for contending that the subject debt

2   was incurred for any purpose other than paying garden-variety

3   credit card debt. As a matter of law, fraudulent intent does not

4   disqualify a debt from "consumer debt" status.

5      It appeared that paragraph 14 served only two possible

6   purposes. First, to intimidate as part of an effort to extract an

7   unjust settlement. Second, for Golden One to evade its exposure

8   to attorneys' fees and costs under § 523(d) for unsuccessful

9   § 523(a)(2) actions in which the creditor's position is not

10  "substantially justified."

11     Rocha asserted in response to the OSC that paragraph 14 "is

12  based on the contention that if a person obtains money from a

13  creditor through a loan but does so with fraudulent intent then

14  that person should not benefit from the protections that are

15  afforded to consumers as such protections are designed to protect

16  the innocent consumer and not a person committing actual fraud."

17  Decl. of Rocha, ¶31.

18     This explanation ignores the effect of § 523(a)(2), which is

19  tailored to except from discharge any debt obtained by actual

20  fraud, and implies § 523(a)(2) is not adequate to the task. And,

21  it disregards the reality that, other than § 523(d), there are

22  virtually no special protections for "consumer debt" in the

23  Bankruptcy Code.

24     The "protections that are afforded to consumers" that Rocha

25  touts are few: (1) § 523(d)(fees and costs for fruitless

26  § 523(a)(2) actions) and (2) § 722 (redemption). The remaining

27  fifteen appearances of "consumer debt" in the Bankruptcy Code and

28  Rules are better described as creditor friendly (§§ 101(3);

1   341(c); 342; 502(k); 524(d)(2)&(c)(6); 528; 547(c)(8); 707(b);

2   1201(a); 1222(b)(1); 1301(a); 1305(a)(2); 1322(b)(1); Rule

3   2002(o); Rule 5008).

4        Ironically, Rocha's theory that the debt was not a "consumer

5   debt" would operate to shoot his client in the foot by stripping

6   Golden One of its special § 341(c) license to appear at and

7   participate in the meeting of creditors without a lawyer. In

8   addition, it would remove the debtor from status as an "assisted

9   person" under § 101(3) and § 526.

10       In short, Complaint paragraph 14 is a transparent effort to

11  evade § 523(d) liability for a creditor who sues unsuccessfully

12  to establish a consumer debt was obtained by nondischargeable

13  § 523(a)(2)fraud.

14       It is also significant that the OSC response does not

15  identify any decisional authority to support paragraph 14. In

16  fact, there is none.

17       On balance, paragraph 14 is both baseless and was made

18  without a reasonable and competent inquiry.

19       Hence, Complaint paragraph 14 violates Rule 9011(b)(2).

20

21                              III

22              Rule 9011(b)(3) Evidentiary Support

23       The signature on the Complaint constitutes a certification

24  that the allegations and other factual contentions have

25  evidentiary support or, if specifically so identified, are likely

26  to have evidentiary support after a reasonable opportunity for

27  further investigation or discovery. Fed. R. Bankr. P. 9011(b)(3).

28       The Golden One response emphasizes the clause "likely to

1　have evidentiary support after a reasonable opportunity for

2　further investigation or discovery."

3　　　The fatal flaw with the invocation of this clause is that no

4　allegation in the Complaint is "specifically so identified," as

5　Rule 9011(b)(3) requires.

6

7　　　　　　　　　　　　　　　IV

8　　　　　　　　11 U.S.C. § 523(d) Fees and Costs

9　　　A creditor who requests determination of dischargeability of

10　a "consumer debt" under § 523(a)(2) that ultimately is discharged

11　is liable for the debtor's costs and a reasonable attorney's fee

12　for the proceeding if the court finds that the position of the

13　creditor was not substantially justified, unless special

14　circumstances would make the award unjust. 11 U.S.C. § 523(d).

15

16　　　　　　　　　　　　　　　A

17　　　The law of the Ninth Circuit regarding § 523(d) was

18　established by First Card v. Hunt (In re Hunt), 238 F.3d 1098

19　(9th Cir. 2001)(spoiler alert: affirming the undersigned as trial

20　judge). Rocha makes no mention of Hunt.

21　　　The questions of "substantial justification" and of "special

22　circumstances" are reviewed for abuse of discretion.

23　　　The creditor plaintiff has the burden to prove its position

24　was substantially justified, which entails demonstrating a

25　reasonable basis in law and fact. Hunt, 238 F.3d at 1103-04.

26　　　Unsupported allegations in a creditor's pleadings are not

27　sufficient to carry the creditor's burden under § 523(d). Hunt,

28　238 F.3d at 1103.

The Ninth Circuit specifically rejected the proposition that "cases brought in good faith should not be chilled," ruling that "whenever the creditor's position is not substantially justified (subject to the special circumstances exception) § 523(d) certainly does aim to chill some actions that are brought in good faith, namely, those that do not have a reasonable basis in law and fact." Hunt, 238 F.3d at 1104 n.6.

Special circumstances that would make an award unjust are subject to traditional equitable principles except that such principles are to be construed in light of the purpose of § 523(d) "to deter creditors from bringing frivolous challenges to the discharge of consumer debts." The express purpose "could be seriously thwarted if the 'special circumstances' exception became a vehicle for rigorous application of some sort of 'unclean hands' doctrine to debtors' attorneys." Hunt, 238 F.3d at 1104, citing S.Rep. No. 98-65, at 9-10 (1983).

It is fascinating that Golden One's response to the § 523(d) issue prepared by Rocha makes no mention of Hunt, even though it has been settled law of the Ninth Circuit since 2001. Instead, it cites three pre-2001 BAP decisions. Itule v. Metlease, Inc. (In re Itule), 114 B.R. 206, 213 (9th Cir. BAP 1990)(No § 523(d) fees for prevailing creditor); First Card v. Carolan (In re Carolan), 204 B.R. 980, 987 (9th Cir. BAP 1996)(creditor "substantially justified"); In re Stine, 254 B.R. 244, 250 (9th Cir. BAP 2000)(reversing "substantially justified" determination).

It is disturbing that Rocha cites, as if it is a holding, a one-judge concurrence in BAP Carolan fretting about the "risk that imposing attorney's fees and costs may chill creditor

efforts" to have fraud debts declared nondischargeable. Not only
does Rocha not disclose that it is a one-judge concurrence and
not a BAP holding, he omits to reveal that the Ninth Circuit
later ruled in <u>Hunt</u> that "§ 523(d) certainly does aim to chill."
<u>Compare</u> OSC Response at 13, <u>with</u> <u>Hunt</u>, 238 F.3d at 1104 n.6.

Rocha's argument is not persuasive – or worse.


                                  B

It follows from the above discussion that the Golden One
adversary proceeding did not have a reasonable basis in law and
fact.

The essential elements of § 523(d) are straightforward.
Golden One requested determination of the dischargeability of a
consumer debt under § 523(a)(2). The debt was discharged. 11
U.S.C. § 523(d).

The position of Golden One was not substantially justified
because the allegations did not have a reasonable basis in law
and fact. <u>Hunt</u>, 238 F.3d at 1103-04 & n.6.

No special circumstances, as to which Golden One has the
burden of proof, have been urged by Golden One that would make an
award of fees and costs unjust.


                                  C

In one respect, this is Golden One's lucky day. The debtor's
bankruptcy counsel did not assist her in defending the adversary
proceeding. There was nothing untoward about leaving the debtor
self-represented because local rules permit chapter 7 counsel to
provide by contract that their scope of representation does not

extend to adversary proceedings. E.D. Cal. Local Bk. Rule 2017-1(a)(1). But he missed an opportunity to claim attorney's fees from Golden One.

The self-represented debtor necessarily incurred costs that are eligible for reimbursement to her under § 523(d). The record is sufficient for this court to make a reasonable estimate of the § 523(d) costs. She incurred production costs for her "Defendant's Statement of Undisputed Facts in Support of Her Motion for Bankruptcy," which was well done for a non-lawyer, and which this court deemed to be an Answer. She was required to make multiple trips to the Sacramento Courthouse from her home in Camino, California, to file her papers and to appear at the status conference hearing that led to the setting of a trial date. A reasonable estimate of the total § 523(d) costs is $450.00, which shall be paid to her by Golden One.

V

Rule 9011 Sanctions

The question becomes what remedial sanctions are appropriate to impose on account of the Rule 9011 violations described here.

A

This is a court-initiated sanction pursuant to an order to show cause, as permitted by Rule 9011(c)(1)(B).

This court's order to show cause was not issued until after the adversary proceeding was dismissed upon this court's order based on the plaintiff's request pursuant to Civil Rule 41(a)(2). Fed. R. Bankr. P. 7041, incorporating Fed. R. Civ. P. 41.

1　　　　Monetary sanctions may not be awarded on the court's

2　initiative where the court's order to show cause does not issue

3　until after voluntary dismissal or settlement of the claims made

4　by or against the party, or whose attorneys are, to be

5　sanctioned. Fed. R. Bankr. P. 9011(c)(2)(B).

6　　　　Nonmonetary sanctions are permitted on the court's

7　initiative following an order to show cause that is issued after

8　dismissal or settlement of the subject claims. Fed. R. Bankr. P.

9　9011(c)(2). The operative principle is that a sanction should be

10　limited to what is sufficient to deter repetition of the conduct

11　or comparable conduct by others similarly situated. Id.

12

13　　　　　　　　　　　　　　　　B

14　　　　There are two points of particular concern. First, Rocha

15　failed to cite controlling Ninth Circuit authority regarding

16　§ 523(d). The consequence for Rocha is self-inflicted

17　reputational damage.

18　　　　Second, Rocha's violation of Rule 9011(b)(2) regarding the

19　allegation in Complaint paragraph 14 that fraud disqualifies a

20　debtor for "consumer debt" status is of more immediate concern.

21　　　　This is not an isolated violation. The records of adversary

22　proceedings in the Eastern District of California reveal that on

23　six other occasions Rocha has filed complaints containing

24　language identical to Complaint paragraph 14:

25　　　　Adv. No. 2022-01013 Golden One v. Lopez　　Complaint ¶ 26
　　　　　Adv. No. 2021-02028 Golden One v. Flores　Complaint ¶ 27
26　　　　Adv. No. 2018-01051 LBS Finan. CU v. Perez　Complaint ¶ 28
　　　　　Adv. No. 2017-02126 LBS Finan. CU v. Nieri　Complaint ¶ 27
27　　　　Adv. No. 2015-02244 Gateway One v. Barry　　Complaint ¶ 19
　　　　　Adv. No. 2014-01110 LBS Finan. CU v. Newton　Complaint ¶ 22

28

1    This is an established pattern of violations of Rule
2    9011(b)(2) by Rocha.

3    Sanctions are appropriate to impose based on what is
4    "reasonably necessary to deter repetition of the conduct by the
5    offending person or comparable conduct by similarly situated
6    persons." Fed. R. Civ. P. 11, Adv. Comm. Note to 1993 Amendment,
7    incorporated by Fed. R. Bankr. P. 9011.

8    Karel Rocha, as the "person signing, filing, submitting, or
9    advocating a document has a nondelegable responsibility to the
10   court." Id. In addition, the law firm of Prenovost, Normandin,
11   Dawe & Rocha "absent exceptional circumstances ... is to be held
12   also responsible." Id.

13   What is reasonably necessary to deter repetition of the
14   conduct in this instance is to impose a requirement of prefiling
15   review by the undersigned judge of every complaint alleging
16   nondischargeable debt before it is filed in the U.S. Bankruptcy
17   Court for the Eastern District of California by Karel Rocha or
18   the law firm of Prenovost, Normandin, Dawe & Rocha between now
19   and June 30, 2025.

20   Dated: November 02, 2023

23   _____
     United States Bankruptcy Judge